## McLaren, adm'r, *et al. vs.* Clark *et al.*

[This case was argued at the last term, and decision reserved.]

1. When an equity cause has been referred to an auditor and reported upon before all interested were made parties to the bill, the court is not obliged, on motion of one of the original parties, to refer the

case again after the new parties have been added by amendment, but may proceed to trial, and allow the new parties to adduce their evidence at the trial in the first instance.

2. That the auditor admitted some incompetent testimony, is no valid objection to the reading of his report when exceptions to it are on trial.

3. An exception that the auditor heard incompetent testimony must allege that the testimony was objected to, or it is of no value.

4. What it was worth to clothe a young lady each year for a given period of time, was not relevant until it appeared by whom or at whose expense her clothing was furnished.

5. A mass of papers having, by consent, been put in evidence in bulk, with an agreement that such of them might be considered as the judge (who was sitting, without a jury, to determine facts as well as law) should think competent evidence, and some having been considered and others not, and there being in the record no certain means of distinguishing between those considered and those not considered, the supreme court cannot pronounce that the findings of the judge on that branch of the case were erroneous.

6. The court did not err in recognizing a right to dower in the widow of Davis Pace, and in upholding the assignment of dower, notwithstanding her delay to apply for the assignment, and notwithstanding her endeavor, for a time, to give effect to the will of her husband, and notwithstanding, that to fully carry out the scheme of the will would involve a surrender of dower. If by reason of fraud or contract her dower estate is liable to factors who made advances, or to other creditors, they can pursue it in her hands. It is her property, and is not now in court as a fund to be distributed.

7. Where the widow is left executrix and uses or acquiesces in the use of the dower lands for the benefit of the estate of the testator, she is not, in every case, entitled to collect rent. She may waive any right to rent which she could have asserted, and whether she has waived it or not, is a question of fact. All the equitable circumstances may be considered.

8. No error in the allowance or rejection of claims, whether against the estate of the testator or in its favor, or in ranking them for payment, is sufficiently apparent to justify a reversal of the findings or decree of the presiding judge.

Equity.   Auditor.   Evidence.   Practice in the Supreme Court.   Wills.   Dower.   Before Judge KIDDOO.   Dougherty Superior Court.   April Term, 1877.

Davis Pace died in 1861, leaving a large estate of lands and negroes to the management and control of his wife

Julia A.   His will directed that the whole of his estate be kept together 'for the benefit of his family ; that his executrix invest the proceeds, according to her discretion, in lands, negroes and farm stock, reserving a sufficient sum for the support and education of his children ; that she should, upon the arrival at full age, or marriage of his children, give off to them respectively their distributive portions of the estate, upon the basis of equal division, unless at such time she shall deem it best to give off a smaller portion ; that this process of division should continue until the last child should arrive at age or marry, it being testator's wish that only one part should be drawn out of his estate when any one child marries or arrives at age, and the residue kept together until a second division, and so on until the arrival at age or marriage of the last child ; that in said division his wife should participate equally with the children.

He appointed his wife executrix and testamentary guardian of his children.

His wife, previous to her intermarriage with him in 1853, was the widow of Alatia Coley, and the mother of Eugenia Clark by that husband.   Both mother and daughter were possessed of some property which came to them from the estate of Coley ; and Mrs. Coley, now Mrs. McLaren, had the property of each in her own hands at the time of her intermarriage with Pace—hers in her own right, and her daughter's as guardian.

The widow's property consisted of a plantation in Dougherty county, with a growing crop of cotton, some negroes, and, she says, money.   Eugenia's property consisted exclusively of negroes, except what her mother, as her guardian, was indebted to her for the hire of the negroes.

The returns of Mrs. Coley as guardian of Eugenia, show that she was indebted to her ward, up to the first of January, 1853, $3,803.70, exclusive of interest.   There is no return by her of the hire of 1853.   In December, 1853,

Davis Pace was appointed guardian for the said Eugenia, by the court of ordinary of Baker county, and he paid her expenses for that year, and made a return of the hire of the negroes for the years 1854, 1855, 1856, 1857, 1858, 1859, and 1860, by which it appears that he was indebted to her as guardian, $6,629.72, exclusive of interest, while the negro hire of 1861 is not returned. As he died in the fall of that year, he made no return of the expenditures from that time forward. After Pace's death, his wife, Julia A., qualified as executrix of said estate, and took charge of it, and managed it as such, until her marriage with Peter McLaren, which occurred in the early part of the year 1867. Her letters abating, Peter McLaren was appointed administrator, and took the estate of Pace into his possession as such, and made a crop on it in the years 1867 and 1868. Early in the spring of 1869, he was removed from the administration of the property, by order of court, and Mrs. McLaren restored to the proper management of the property by order of the court and a special act of the legislature, as trustee and executrix of the estate.

Some time in July, 1861, Eugenia intermarried with Jesse S. Beall, who took charge of her estate as her husband, and in 1863 was killed in the army. His wife, Eugenia, subsequently intermarried with C. M. Clark. In the latter part of February, or the first of March, 1868, after Peter McLaren had made one crop on the plantation of Pace, as administrator, his wife, Mrs. McLaren, and Mrs. Eugenia Clark, filed separate bills in equity against him. Both of these bills asked an injunction against him, and parties who had the cotton crop of 1867, belonging to the estate, to-wit: Hardeman & Sparks and I. C. Plant, to restrain them from paying over the proceeds of the sales of the cotton to McLaren, and asking an account against the estate of Pace of what each one of them claimed to have been due them by Davis Pace in his life-time—the one as his wife, the other as his ward.

Mrs. McLaren claimed that Peter McLaren was in-

debted to her in the sum of fifteen or sixteen thousand dollars for moneys that her husband had received of her in his life-time, that belonged to her separate property under her alleged settlement. Mrs. Eugenia Clark claimed an account of what he had in his hands as her guardian.

These bills were served on McLaren immediately, and on the 10th of March, 1868, they submitted the matter, by agreement, to Judge Vason, for settlement. On the 27th of the same month he decreed, in substance, as follows :

That McLaren was indebted to the estate of Pace a balance of $476.33, against which said estate was due him certain items on expense account aggregating $2,673.79.

That the claim of Mrs. Clark, founded upon the guardianship of Pace, be allowed to the amount of $22,423.01.

That the claim of Mrs. McLaren, founded upon her marriage contract with Pace, be allowed against his estate, as being due by him as trustee, to the amount of $18,055.28.

That the two last claims rank equally as trust debts.

Mrs. McLaren continued to manage the estate of Davis Pace from 1869 to the filing of the bill in this case. In 1869, Peter McLaren bought up a large amount of the claims against the estate of Pace, in the hands of Smith & Strozier and Hines & Hobbs, for which he paid the sum of fourteen thousand dollars in cash, the claims amounting, in principal and interest, to about thirty thousand dollars ; and in 1870, Mrs. McLaren turned over to him, on account of these payments, one hundred and three bales of cotton, which he received and sold. In 1872, he advanced the money to his wife to run the farm of the estate for the years 1872 and 1873, paying out all the money that was supplied on the farm for these two years, out of his own individual money ; and she turned over to him the cotton crops of those years to reimburse him for such expenditures.

On the 3d of November, 1873, Mrs. Eugenia Clark, now the wife of C. M. Clark, brought this bill against Peter McLaren, and Julia A. McLaren, as executrix and trustee of the estate

of Davis Pace, for the purpose of enforcing the execution which she held, issued from the decree rendered by Judge Vason, in March, 1868, in which she charged Peter McLaren and Mrs. McLaren with colluding and confederating together in the mismanagement of the estate of Pace, wasting it in various ways and using the moneys for their own purposes, and not paying the debts; and alleging that there were large amounts from the estate in his hands; and asked an injunction against the sale of the property, the sale of the corn crops of that year, and the appointment of a receiver, and an account against Peter McLaren and Julia A. McLaren for every dollar of the estate that went into their hands; and that such assets should be paid into the hands of a receiver. It also prayed general relief. It also prayed for the appointment of an auditor to hear all claims against said estate, and to have them passed upon as to amounts, liens and dignities; and to have said property now on hand sold, and the proceeds paid into court and distributed, with power to any just creditor of said estate to have the right to come in and be made a party plaintiff to this bill, and have his rights adjudicated, and have the estate wound up and settled, discovery being waived.

E. H. McLaren, the son of Peter McLaren, was also made a party defendant to that bill—the bill alleging that Peter McLaren had fraudulently conveyed his plantation to said E. H. McLaren; and they were both enjoined from the sale of the estate. The bill alleged that Peter McLaren, as such administrator, took possession of the crops of cotton of the estate in 1867, 1868, and 1869—about nine hundred bales.

Peter McLaren filed his answer, on the 2d of January, 1874, very fully and circumstantially giving a detailed account of all the money he had paid out for said estate, either as administrator, or to his wife, Julia A. McLaren, or for her at her request, from the 16th of December, 1866, up to the filing of the answer, as also of the cotton he had received and sold belonging to said estate, showing that he

received of the crops of 1866, 1867, and 1868, six hundred and fifty-seven bales, and not nine hundred, as stated in the bill ; and one hundred and three bales in 1871.

After this bill was filed, say on the 11th of December, 1873, at chambers, Maria N. Nelson, E. N. Hudson and Albert Bork were made parties plaintiffs by order of Judge Stozer of that date.

Peter McLaren was served with this bill on the 3d of November, 1873 ; Mrs. McLaren, on the 1st of January, 1874 ; and E. H. McLaren, on the 30th of December, 1873.   Mrs. McLaren filed no answer.   E. H. McLaren did.

On the 10th of March, 1874, the presiding judge of the court appointed William E. Smith receiver and auditor in the case, who entered on the discharge of his duties.   He, after hearing the evidence at great length, made his report, in which he reported a balance against Peter McLaren of $3,120.29.

This report was made at the April term 1876 of Dougherty superior court.   He reported in favor of a very large number of persons as having claims against the estate who were not parties to the bill, but had come in during the hearing and after the case had been transferred to the auditor, without any pleadings making them parties or stating their claims, or giving notice to anybody at all, all of which appear in his report; and amongst them, Mrs. Julia A. McLaren came in, having reduced her claim to writing.   She claimed that the estate of Davis Pace was indebted to her for a large amount of money for extra compensation for extraordinary services rendered by her to that estate, from the death of Davis Pace down to the filing of the bill.   She also put in her claim under the decree rendered by Judge Vason in her favor on the 7th of March, 1868, of $18,055.28 ; and the auditor, in passing upon this claim, went back and inquired into her returns as to how she stood as executrix on the estate of her husband, from the beginning of her administration up to that time, upon which he found there was a

balance due her, up to October, 1865, of $1,369.00, and that from the receipts and disbursements of the estate from that time up to November, 1866, there was a balance due her as executrix of $3,605.84; he then charged her with $4,400.00, which she got from Peter McLaren before her intermarriage with him, and, after this settlement, he found a balance due by her to the estate, as executrix, of $94.16. He allowed her $1,300.00 for her extra compensation, which left a balance due her by the estate of $1,205.84. He reported in favor of her claim against the estate of Pace, $15,000.00, which Davis Pace, in his lifetime, held of her individual and separate estate, without interest.

To this report, exceptions were filed by E. H. McLaren, as administrator of Peter McLaren, and as a creditor of the estate; by Mrs. McLaren, Mrs. Clark, and other creditors.

The case thus made was submitted to Judge Kiddoo, without the intervention of a jury, and under an agreement that all the documentary and oral testimony introduced before the auditor, should be considered as in evidence.

When the report was offered in evidence, it was objected to by McLaren, administrator, on the ground that the auditor had reported in favor of other claims than those before the court at the time of the reference. He further moved that the parties should make up an issue on each claim, and that the case be referred back for report on such issues.

The court overruled the objection and the motion, holding that creditors might now be made parties with proper pleadings, and prove their respective claims by other evidence than the report. To this McLaren, administrator, excepted.

The said McLaren objected further to the reading of the report, upon the ground that Davis, who testified before the auditor in support of the claim of Mrs. Clark, to certain admissions made by Pace to him, was, at the time, the attorney of Pace, and had acquired such knowledge by reason of this confidential relationship. The court over-

ruled this objection upon the ground that it did not appear to have been taken before the auditor.

In the course of the trial, counsel for the estate of Pace and for McLaren, administrator, asked a witness what it was worth to clothe a young lady such as Mrs. Clark was, per year? Counsel for the latter objected, and the court sustained the objection until it should be shown that Pace furnished her.

A bundle of papers was submitted by McLaren, administrator, as showing payments by his intestate for the estate of Pace. On objection, the court declined to receive them in that way. It was then agreed that the court might take the bundle and consider in evidence such as he deemed admissible. The judge certifies that the great majority of these papers, not showing that they had anything to do with Pace's estate in themselves, were not considered.

It was insisted by counsel for McLaren, administrator, that a proper consideration of this testimony would have altered the balance found against his intestate.

As to the dower allowed Mrs. McLaren, the evidence showed that she attempted for some time to carry out the will of her deceased husband Pace, but finding that impossible, she applied for dower to the December term, 1867, of Dougherty superior court. There was no testimony to show that she had released here right except that implied from delay.

Mrs. McLaren also claimed rent for her dower until it was set apart for her, as it was being used for the benefit of the estate.

The court allowed her the dower which had been set apart, but refused the rent. An elaborate decree was rendered passing upon each claim and each exception to the auditor's report *seriatim*. To this decree each of the main parties to the litigation excepted.

The foregoing statement, it is believed, will render the rulings of this court intelligible. It is the best that the reporter is able to do with the most voluminous record and

bill of exceptions he has ever beheld, without publishing a separate volume devoted exclusively to the McLaren case.

R. F. LYON; D. A. VASON, for McLaren, administrator.

WARREN & HOBBS; C. B. WOOTEN; STROZER & SMITH, for Mrs. Clark.

RICHARD HOBBS; S. HALL; WILLIAM OLIVER, for N. & A. F. TIFT, creditors.

L. P. D. WARREN; C. B. WOOTEN; STROZER & SMITH; R. F. LYON; D. A. VASON; D. H. POPE; WM. U. GARRARD, for Mrs. McLaren *et al.*

BLECKLEY, Justice.

1. To refer to an auditor is not obligatory upon the court, but is in its sound discretion. After there has been a reference and a report, and new parties have been added by amendment, a second reference may doubtless be made, but the court is not obliged to make it. The new parties can adduce their evidence at the trial, and both the old and the new have a fair and complete hearing.

2. Exceptions to the report were being tried by the judge without a jury. Grant that the auditor had admitted illegal evidence, the mere reading of the report would not thereby be hindered. The report had to be read in order to get at the contents, so as to determine the exceptions.

3. One of the exceptions to the report complained that the auditor admitted certain illegal testimony, but this may have been done without objection, and if so, the excepting parties would be too late. Exceptions which merely complain of the illegal testimony, without alleging that it was objected to, should not be sustained, for they do not go far enough.

4. In respect to the clothing of the young lady, it seems that the presiding judge only kept out evidence as to value until its relevancy should be made to appear.

5. Very many papers were submitted to the judge in bulk and went before him by consent with no determination at that time as to which would be treated as evidence, and which would not. He certifies, in effect, that he considered some of them and did not consider the rest, but how to distinguish the former from the latter we know not. If we undertook to say that this or that particular paper was considered, we might be mistaken; and there is equal chance of mistake if we ventured to say it was not considered. In order to review findings on facts, it is essential to know what was evidence in the case and what was not.

6. The dower of Mrs. Pace was not cut of by any statute of limitations, for these statutes were suspended. Neither was it cut off by her attempt to execute the will. A widow appointed executrix is entitled to accept the office of executrix and act in it without forfeiting her right to dower. Where the will, in some of its provisions, is inconsistent with dower, she ought to elect between them in a reasonable time under all the circumstances, but she may wait long enough to ascertain the actual condition of the estate, and see what will be the practical operation of the will, in its real working, upon her interest as widow or dowager. A will apparently unobjectionable may turn out, on fuller information as to extrinsic facts, and on some trial of its practical working, to be anything but acceptable. Considering the state of the times, and all the circumstances, we cannot say that Mrs. Pace waited too long; or rather we cannot overrule the presiding judge in his decision to the effect that she did not.

No reason for withholding confirmation of the assignment of dower is presented by the fact that the dower estate may be liable to factors or others in consequence of legal or equitable rights in their favor against Mrs. Pace, now Mrs. McLaren, predicated on her transactions in the management of the estate. The question now is whether she is entitled to dower. If she is, it is her property and is not now in court as a fund to be distributed. When factors or other

creditors come against it to subject it as dower, she may or may not be able to resist them.

7. Any use of the dower lands for the benefit of the estate of the testator which was either made by the widow or acquiesced in by her, may be treated as a concession on her part in behalf of the estate under the peculiar circumstances surrounding herself and the property. She was executrix, and undertook to execute the will. The will did not anticipate any assertion by her of the right of dower, and doubtless there was a long interval during which she did not contemplate asserting the right. She went to work to carry out the will, and it was years before this purpose was abandoned. No dower lands were laid off, and the whole realty was used as the property of the general estate. It was not understood that she as executrix was renting from herself as widow, nor was it understood that McLaren was renting from her whilst he represented the estate. There were various equitable circumstances to be considered in passing upon her right to claim rent, after she had apparently waived it. There could be a waiver implied, and in raising the implication all the surroundings, so far as they were in evidence, might be looked to. To deny her rent until she had claimed and secured dower, was not, in the decision of such a case, improper.

8. In the allowance or rejection of the various claims which were before the court, whether against the estate of the testator or in its favor, and in ranking for payment such as were allowed, the presiding judge, so far as we can ascertain from the record, committed no error which calls for a reversal of his judgment. Besides the labor which the members of this court as a body bestowed on the case, one of them gave to it special study and examination, and kept it for a very long time under consideration. In bulk and complexity, nothing equal to it can be easily found. In fact, it is a *separate science*, and to do it full justice upon every detail would require an opinion not less voluminous than the record itself. To write such an opinion is a task which I

could not perform to my own satisfaction, or to that of the parties or their counsel, without ceasing to participate in the current business of the supreme court.

Judgment affirmed.